## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JAMES AARON HUDSON,

     Plaintiff,

v.                                                                    Civ. No. 1:21-cv-01126 MIS/KK

GENESIS HEALTHCARE, INC. and
PEAK MEDICAL NEW MEXICO NO. 3 LLC,

     Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Genesis Healthcare, Inc.'s ("Genesis Healthcare") Motion to Dismiss for Lack of Personal and Subject Matter Jurisdiction or, Alternatively, to Compel Arbitration. ECF No. 6. Plaintiff responded, and Genesis Healthcare replied. ECF Nos. 10, 13. For the reasons that follow, the Court will GRANT the Motion based on lack of personal jurisdiction.

## BACKGROUND

Plaintiff filed suit in state court on October 12, 2021, alleging claims under the New Mexico Human Rights Act ("NMHRA"), the Family and Medical Leave Act ("FMLA"), and the Public Health Emergency Response Act, N.M. Stat. § 12-10A-1. ECF No. 1-1. Defendants removed the case on November 23, 2021. ECF No. 1.

All claims arise out of Plaintiff's employment and subsequent termination at Rio Rancho Center in Albuquerque, New Mexico. ECF No. 1-1 at ¶ 2. In the Complaint, Plaintiff alleged as follows:

> Defendants' employment relationship with Plaintiff is unclear, and so Plaintiff is unable to determine whether one or both are the proper employer

or employers, and will need to conduct discovery to properly determine this issue.

ECF No. 1-1 at ¶ 3. The Declaration of Michael Berg, Vice President Deputy General Counsel—Corporate and Assistant Secretary for Genesis Administrative Services LLC, establishes that Defendant Peak Medical New Mexico No. 3 LLC ("Peak Medical") transacts business as Rio Rancho Center. ECF No. 6-1 at 4, ¶ 9. Genesis Healthcare, Inc., is a holding company with an indirect ownership interest in Peak Medical. *Id*. at 3–4, ¶¶ 4, 9.

Genesis Healthcare moves for dismissal of Plaintiff's claims against it on the basis that (1) there is no personal jurisdiction in this forum and (2) Genesis Healthcare is not an "employer" within the meaning of the applicable statutes, depriving this Court of subject matter jurisdiction. ECF No. 6. In the alternative, Genesis Healthcare moves to compel arbitration of Plaintiff's claims. Finding no personal jurisdiction, the Court does not reach the issues of subject matter jurisdiction or arbitration.[1]

---

[1] Personal jurisdiction and subject matter jurisdiction may be addressed in either order, but both precede a determination about whether to compel arbitration. *See Estate of Cummings v. Cmty. Health Sys.*, 881 F.3d 793, 800 (10th Cir. 2018) (finding that the district court "properly exercised its sound discretion in [addressing] personal jurisdiction over CHSI before resolving subject-matter jurisdiction"); *Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 923 (5th Cir. 2017) ("[T]he district court must have jurisdiction in the first instance to compel arbitration[.]"). The Court declines to grant dismissal for lack of subject matter jurisdiction on the basis of Plaintiff's failure to respond. *See* ECF No. 13 at 1. Dismissal would be particularly inapposite in this case because, based on a cursory review of the merits, Plaintiff's federal claim survives regardless of the number of Genesis Healthcare's employees. *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 726 n.4 (10th Cir. 2006) (holding that employee-numerosity requirements of the FMLA are not jurisdictional). Furthermore, the absence of subject matter jurisdiction in a removed case warrants remand rather than dismissal. *Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1226 (10th Cir. 2012) ("The plain language of § 1447(c) gives no discretion to dismiss rather than remand an action removed from state court over which the court lacks subject-matter jurisdiction." (quotation omitted)).

**LEGAL STANDARD**

A motion under Federal Rule of Civil Procedure 12(b)(2) challenges the existence of personal jurisdiction. To establish personal jurisdiction over a nonresident defendant in a diversity action, the plaintiff must show that (1) "jurisdiction is proper under the laws of the forum state," and (2) "the exercise of jurisdiction would not offend due process." *Intercon, Inc. v. Bell Atl. Internet Sols., Inc.*, 205 F.3d 1244, 1247 (10th Cir. 2000). New Mexico's long-arm statute "extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." *Tercero v. Roman Catholic Diocese*, 48 P.3d 50, 54 (N.M. 2002); N.M. Stat. § 38-1-16 (2018). Therefore, the statutory inquiry collapses into the constitutional analysis. *Anzures v. Flagship Rest. Grp.*, 819 F.3d 1277, 1279 (10th Cir. 2016).

The Due Process Clause allows for personal jurisdiction over a nonresident defendant "so long as there exist minimum contacts between the defendant and the forum State." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980). The requisite "minimum contacts" may be established in one of two ways. *Intercon*, 205 F.3d at 1247. First, the court may exercise "general jurisdiction" when a defendant is "essentially at home" in the forum state. *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1024 (2021). General jurisdiction "extends to any and all claims brought against a defendant," but demands proportionally greater contacts with the forum state. *Id*. Second, the court may exercise "specific jurisdiction" over a nonresident defendant "only for claims related to the defendant's contacts with the forum State." *XMission, L.C. v. Fluent LLC*, 955 F.3d 833, 840 (10th Cir. 2020). Unlike general jurisdiction, specific jurisdiction does not apply to all claims against a given defendant. It

is proper only if "(1) the out-of-state defendant 'purposefully directed' its activities at residents of the forum State, and (2) the plaintiff's alleged injuries 'arise out of or relate to those activities.'" *Id*. (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Even if the plaintiff satisfies these requirements, "the defendant can defeat jurisdiction by presenting a 'compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id*. (quoting *Burger King*, 471 U.S. at 477). Unreasonableness is assessed with respect to the following factors:

> (1) the burden on the defendant, (2) the forum State's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

*Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 909 (10th Cir. 2017) (quoting *Pro Axess, Inc. v. Orlux Distrib.*, 428 F.3d 1270, 1279–80 (10th Cir. 2005)).

On a Rule 12(b)(2) motion, "[t]he plaintiff has the burden of establishing personal jurisdiction." *Id*. at 839. "Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing." *Behagen v. Amateur Basketball Assoc.*, 744 F.2d 731, 733 (10th Cir. 1984). The court takes as true "all well-pled (that is, plausible, non-conclusory, and non-speculative) facts" alleged in the complaint, unless they are contested by affidavit or other written materials. *Dudnikov v. Chalk & Vermilion Fine Arts*, 514 F.3d 1063, 1070 (10th Cir. 2008); *see also Schrader v. Biddinger*, 633 F.3d 1235, 1248 (10th Cir. 2011) ("[E]ven well-pleaded jurisdictional allegations are not accepted as true once they are controverted by affidavit," which may in turn be contradicted by

"specific averments, verified allegations, or other evidence sufficient to create a genuine issue of fact."). If the parties present contradicting affidavits, all factual disputes must be resolved in the plaintiff's favor. *Behagen*, 744 F.2d at 733.

## DISCUSSION

Genesis Healthcare is a Delaware corporation with its registered office in Wilmington, Delaware. ECF No. 6-1 at 3, ¶¶ 5–6; *id*. at 6. It is undisputed that, nominally, Peak Medical (doing business as Rio Rancho Center) was Plaintiff's employer. "[C]omplete stock ownership of a corporation does not of itself make a parent corporation subject to local jurisdiction in a state where the subsidiary operates but the parent does not." *Curtis Publ'g Co. v. Cassel*, 302 F.2d 132, 137 (10th Cir. 1962). Therefore, the existence of personal jurisdiction depends on Plaintiff's arguments that (1) Peak Medical is an alter ego of Genesis Healthcare and (2) Peak Medical acted as Genesis Healthcare's agent. ECF No. 10; *see Jemez Agency v. Cigna Corp.*, 866 F. Supp. 1340, 1343 (D.N.M. 1994).

Plaintiff argues, first, that Peak Medical is Genesis Healthcare's alter ego because Genesis Healthcare exerted substantial control over its operations. "Companies conducting business through their subsidiaries can qualify as transacting business in a state, provided the parent exercises sufficient control over the subsidiary." *Pro Axess*, 428 F.3d at 1278; *see also Fireman's Fund Ins. Co. v. Thyssen Mining Constr. of Can.*, 703 F.3d 488, 494 n.3 (10th Cir. 2012). Specifically, under New Mexico law,[2] "if the parent's

---

[2] State law "controls the alter ego analysis in the context of establishing personal jurisdiction over a parent based on the acts of its subsidiary." *Jemez*, 866 F. Supp. at 1343; *see also Ten Mile Industrial Park v. Western Plains Service Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987) (applying Wyoming law).

control of the subsidiary goes beyond that normally exercised by a majority shareholder, and is 'so complete as to render the subsidiary an instrumentality of the parent,' the Court may deem the subsidiary the mere 'alter ego' of the parent and, accordingly, may pierce the corporate veil." *Jemez*, 866 F. Supp. at 1343 (quoting *Cruttenden v. Mantura*, 640 P.2d 932, 934 (N.M. 1982)). This may be shown if the parent company "actually controls the subsidiary's day-to-day business decisions and disregards the subsidiary's business entity." *Quimbey v. Cmty. Health Sys.*, Civ. No. 14-cv-00559 KG/KBM, 2015 U.S. Dist. LEXIS 193449, at *25 (D.N.M. Sept. 22, 2015). Put another way, Plaintiff must demonstrate that Peak Medical "was operated not in a legitimate fashion to serve the valid goals and purposes of that corporation but . . . functioned instead under the domination and control for the purposes of some dominant party," in this case, Genesis Healthcare. *Berry v. Bryant*, Civ. No. 11-cv-0514 JCH/GBW, 2012 U.S. Dist. LEXIS 200098, at *11 (D.N.M. Mar. 15, 2012) (quoting *Garcia v. Coffman*, 946 P.2d 216, 220 (N.M. Ct. App. 1997)).

The declarations of Mr. Berg attached by Genesis state, inter alia, as follows: (1) Genesis does not have an office, bank account, or registered agent for service of process in New Mexico; (2) Genesis does not transact any business in New Mexico; (3) Genesis has no direct control over Rio Rancho Center or its operations; (4) Genesis does not control or direct Rio Rancho's Center's day-to-day operations; (5) Genesis does not employ, hire, train, credential, or supervise health care staff at Rio Rancho Center; (6) Genesis does not make financial decisions for Rio Rancho Center; and (7) Genesis and Rio Rancho Center maintain separate accounting records. ECF Nos. 6-1 at 3–4; 13-1 at 1–2.

Plaintiff contends, nonetheless, that Genesis Healthcare "is both clearly stated, and implied, to be the employer, operator, and responsible party at Rio Rancho Center and other New Mexico GHI locations." ECF No. 10 at 7. To show that Peak Medical is Genesis Healthcare's alter ego, Plaintiff first asserts he believed he was employed by Genesis Healthcare because all of his employment information and documentation—including the arbitration agreement relevant to Peak Medical's separate motion, *see* ECF No. 5-1 at 11—had Genesis Healthcare's name on it. In addition, Plaintiff asserts that Genesis Healthcare's name is on all the signs at Rio Rancho Center and that employee email addresses are registered to the domain name "genesishcc.com." As a preliminary matter, a plaintiff's "claimed confusion about [the defendant's] corporate structure" does not establish "a unity of interests and ownership" between parent and subsidiary. *Gas Sensing Tech*, 795 F. App'x at 1021 (quoting *Ten Mile Industrial Park v. Western Plains Service Corp.*, 810 F.2d 1518, 1527 (10th Cir. 1987)). The name "Genesis Healthcare, Inc." does not appear in the Mutual Arbitration Agreement signed by Plaintiff.[3]

The other facts averred by Plaintiff are not supported by evidence or by allegations of the Complaint, and the Court may not rely on the arguments of counsel to find minimum contacts with the forum state. Moreover, Mr. Berg's declaration establishes that "[t]he 'Genesis' trade name, as it appears on various uniforms, work schedules, and buildings,

---

[3] The "Company Name" on the Mutual Arbitration Agreement is listed as "Rio Rancho Center," and "Employer" is defined as "Genesis Administrative Services LLC and/or any direct or indirect parent, subsidiary, division or affiliate of Genesis Administrative Services LLC to whom I applied for employment and/or with whom I am and/or was at any time employed." ECF No. 5-1 at 11. Even if Genesis Healthcare bears one of the listed relationships to Genesis Administrative Services LLC, Plaintiff only applied to and worked for Rio Rancho Center, a.k.a. Peak Medical. Genesis Healthcare is neither named nor referenced in the arbitration agreement.

is not a specific reference to Genesis Healthcare, Inc., but instead is a reference to the Genesis common brand." ECF No. 13-1 at ¶ 23. The "Genesis" trademark is owned by Genesis IP LLC, not by Genesis Healthcare.[4] *Id.* at 3, ¶ 24; 6–7. Plaintiff's contention that Peak Medical's name never appeared on any of his employment documents is incorrect. Plaintiff's pay stubs listed "PM New Mexico No. 3, Inc." under "Employer Information," and his W-2 listed the "Employer's name" as "GHC PAYROLL LLC / AGENT FOR: PEAK MEDICAL NEW." ECF No. 13-1 at 33, 34. The 2019 Genesis Employee Handbook also states:

> As used in this Handbook, the terms "Genesis HealthCare," "Genesis," or "the Company" refer to each of Genesis HealthCare, Inc.'s wholly-owned subsidiaries, who are acting as employer. For instance, if you work at a skilled nursing facility, that facility is your employer and not Genesis Healthcare, Inc.

ECF No. 13-1 at 36. These facts, taken singly or together, do not support an inference that Genesis Healthcare controlled the day-to-day business operations of Peak Medical or disregarded its business entity. *See Quimbey*, 2015 U.S. Dist. LEXIS 193449, at *25. On the contrary, Plaintiff's pay stubs and W-2 strongly indicate a distinction between the corporate entities of Peak Medical and Genesis Healthcare.

Plaintiff also attaches as exhibits one page of the Genesis Healthcare Code of Conduct and several portions of the Genesis website. ECF Nos. 10-2, 10-3, 10-4. The Code of Conduct states that it applies to all "covered persons," defined as "directors, officers and any employees of Genesis Healthcare, Inc. and its subsidiaries and

---

[4] Genesis Healthcare's declaration and exhibit evidence establishes that Genesis Administrative Services LLC and Peak Medical "entered into an Administrative Services Agreement . . . through which [Genesis Administrative Services LLC] sublicensed the 'Genesis' trademark to Rio Rancho Center." ECF No. 13-1 at 4, ¶ 25; 16.

independent contractors." ECF No. 10-2. It is not entirely clear what Plaintiff intended this exhibit to show. However, even assuming that the Code of Conducted was created and unilaterally enforced by Genesis Healthcare, "[c]ourts repeatedly have held that a parent may articulate general policies and procedures for its subsidiary without subjecting itself to jurisdiction in the forum where its subsidiary is present." *Weisler v. Cmty. Health Sys.*, Civ. No. 12-cv-0079 MV/CG, 2012 U.S. Dist. LEXIS 139924, at *40–41 (D.N.M. Sept. 27, 20120 (citing *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1363 (10th Cir. 1974); *Andresen v. Diorio*, 349 F.3d 8, 12 (1st Cir. 2003)).

On the Genesis website, Plaintiff points to the fact that Genesis Healthcare advertises its subsidiary centers in New Mexico to potential customers; advertises employment positions at its New Mexico locations; and advertises that its employees are fully vaccinated. However, Genesis Healthcare's website does not represent itself and Peak Medical as "one entity." *C.f. Romero v. TitleMax of N.M., Inc.*, Civ. No. 17-cv-0775 KG/SCY, 2020 U.S. Dist. LEXIS 140648, at *9 (D.N.M. Aug. 6, 2020). On the contrary, its website states in a prominent footer: "Genesis HealthCare is a holding company with subsidiaries that, on a combined basis, provide services to skilled nursing facilities and assisted/senior living communities." *Genesis HealthCare*, https://genesishcc.com/ (last visited May 6, 2022). The "About Us" section indicates that "Genesis' *subsidiaries* employ approximately 40,000 people." *Id.* (emphasis added). In any event, "[g]eneral references by a parent corporation to the business of its subsidiary as being part of the business of the parent does not serve to erase the substantive and legal distinction between corporations." *Berry*, 2012 U.S. Dist. LEXIS 200098, at *16; *see also Lucero v. Carlsbad Med. Ctr., LLC*, Civ. No. 2:18-cv-00148 WJ/LF, 2018 U.S. Dist. LEXIS 109527,

at *11 (D.N.M. June 29, 2018) ("[M]ultiple courts have rejected the argument that "we," "us," "our," and the company on a . . . website does away with legal distinctions between corporations or subjects the parent company to personal jurisdiction."). The Court does not find that Genesis Healthcare's unified search and listing system for its subsidiary facilities and employment opportunities, particularly in light of its explicit statement that its subsidiaries provide the listed services, erodes the distinction between parent and subsidiary.[5]

Finally, Plaintiff offers several exhibits from the third-party website "LinkedIn." Plaintiff contends that Genesis Healthcare's LinkedIn profile advertises it has 10,001+ employees; that Peak Medical has no LinkedIn profile; and that several individuals list Genesis Healthcare as their employer on their LinkedIn profiles. ECF Nos. 10 at 5–6; 10-5, 10-6. Genesis Healthcare's statement on LinkedIn that the "Company size" is "10,001+ employees" does not indicate anything about the corporate distinction between Genesis Healthcare and its subsidiaries. It is a "common business practice" for a parent company to make "generic statements" that the subsidiary's employees are its own employees, particularly in a legally informal context. *Berry*, 2012 U.S. Dist. LEXIS 200098, at *17 (quoting *Moody v. Charming Shoppes of Del., Inc.*, 2008 U.S. Dist. LEXIS 120585, at *4 (N.D. Cal. 2008)); *see also Lucero*, 2018 U.S. Dist. LEXIS 109527, at *12 ("[C]ollective references in press releases do not establish in personam jurisdiction[.]"

---

[5] Though Plaintiff does not squarely raise the issue in his brief, the Court finds that Genesis Healthcare's advertisement of its subsidiaries likewise does not warrant personal jurisdiction as to Plaintiff's claims on a direct contact theory. Because Genesis Healthcare "does not employ, hire, train, credential or supervise health care staff at Rio Rancho Center," the facts adduced by Plaintiff are insufficient to show that his injuries "arise out of or relate to" Genesis Healthcare's own contacts with New Mexico. *See Burger King*, 471 U.S. at 472.

(quoting *Moody*, 2008 U.S. Dist. LEXIS 120585, at *4). The fact that Peak Medical has no LinkedIn profile, if true, has no impact on the jurisdictional analysis. The profiles of third parties on a third-party website are also immaterial to the jurisdictional inquiry. Personal jurisdiction may only be established by the acts of the defendant. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("[T]he relationship must arise out of contacts that the 'defendant himself' creates with the forum State." (quoting *Burger King*, 471 U.S. at 475)). Therefore, third-party representations about Genesis Healthcare's status as an employer hold no relevance to the present Motion.

In short, Plaintiff's exhibits do not controvert Genesis Healthcare's declaration evidence that it does not "employ, hire, train, credential or supervise health care staff at Rio Rancho Center" and does not "control or direct Rio Rancho Center's day-to-day operations." ECF No. 13-1 at 2, ¶¶ 8, 10. Nor do they show that Genesis Healthcare's control of Peak Medical "is so complete as to render the subsidiary an instrumentality of the parent," *Allen v. Toshiba Corp.*, 99 F. Supp. 381, 390 (D.N.M. 1984) (quoting *Cruttenden*, 640 P.2d at 434), or that Genesis Healthcare "disregard[ed] the subsidiary's business entity," *Quimbey*, U.S. Dist. LEXIS 193449, at *25. Accordingly, the Court finds that personal jurisdiction is not appropriate under an alter ego theory.

Plaintiff also contends that Peak Medical had "apparent authority" to act as Genesis Healthcare's agent, thereby subjecting Genesis Healthcare to personal jurisdiction in New Mexico. ECF No. 10 at 3–4; *see Tercero v. Roman Catholic Diocese*, 48 P.3d 50, 56 (N.M. 2002). Apparent authority "arises from manifestations by the principal to the third party"; in this case, by Genesis Healthcare to Plaintiff. *Id*. Plaintiff argues that because Genesis Healthcare "[held] itself out as the employer and the

operator of all its facilities in New Mexico," ECF No. 10 at 4, Peak Medical had apparent authority to act as its agent. Setting aside the intricacies of apparent versus actual authority, Plaintiff has presented no evidence to support his theory that Peak Medical was acting as Genesis Healthcare's agent when it made decisions about his employment or termination.[6] Because, again, Plaintiff has failed to controvert Genesis Healthcare's declaration evidence that it did not control Peak Medical's business operations or employ any of its staff, the Court finds no personal jurisdiction under an agency theory.[7]

## CONCLUSION

For the foregoing reasons, Defendant Genesis Healthcare, Inc.'s Motion to Dismiss for Lack of Personal Jurisdiction (ECF No. 6) is **GRANTED**. Plaintiff's claims against Defendant Genesis Healthcare, Inc., are hereby **DISMISSED WITHOUT PREJUDICE**.

_____
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE

---

[6] Plaintiff presented no evidence specific to agency and, indeed, there is substantial overlap between the theories of alter ego and agency in the personal jurisdiction context. *See, e.g., Lucero v. Carlsbad Med. Ctr., LLC*, Civ. No. 2:18-cv-00148 WJ/LF, 2018 U.S. Dist. LEXIS 109527, at *6 (D.N.M. June 29, 2018) ("Because the *alter ego* and agency analyses for purposes of this case are substantially similar, the Court will analyze them together."). Therefore, the analysis conducted above with respect to alter ego is substantively applicable to Plaintiff's agency theory as well.

[7] Plaintiff did not request jurisdictional discovery, and the Court would not grant it in any case without a more persuasive factual showing or, at least, more specific allegations. "A plaintiff is not entitled to discovery to establish essentially speculative allegations necessary to personal jurisdiction." *Lucero*, 2018 U.S. Dist. LEXIS 109527, at *13 (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 715 (1982) (Powell, J., concurring)).