IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JAMES AARON HUDSON,

    Plaintiff,

v.                                                        Civ. No. 1:21-cv-01126 MIS/KK

PEAK MEDICAL NEW MEXICO NO. 3 LLC,

    Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Peak Medical New Mexico No. 3 LLC's ("Peak Medical") Motion to Compel Arbitration and Dismiss Plaintiff's Claims with Prejudice or, Alternatively, to Stay. ECF No. 5. Plaintiff filed a response, and Peak Medical filed a reply. ECF Nos. 9, 12. For the reasons that follow, the Court will GRANT the Motion and compel arbitration of Plaintiff's claims.

## BACKGROUND

Plaintiff filed suit in state court on October 12, 2021, alleging claims under the New Mexico Human Rights Act ("NMHRA"), the Family and Medical Leave Act ("FMLA"), and the Public Health Emergency Response Act, N.M. Stat. § 12-10A-1. ECF No. 1-1. Defendants removed the case on November 23, 2021. ECF No. 1.

All claims arise out of Plaintiff's employment and subsequent termination at Rio Rancho Center in Albuquerque, New Mexico, which is operated by Peak Medical. ECF No. 1-1 at ¶ 2. Plaintiff's employment at Rio Rancho Center began around 2012 and was terminated on July 20, 2020. *Id*. at ¶¶ 12, 68. On May 15, 2019, Plaintiff electronically

signed[1] a "Mutual Arbitration Agreement" in which he and Peak Medical ("Employer") agreed

> to the resolution by arbitration of all disputes, claims or controversies, past, present or future, including without limitation, claims arising out of or related to my application for employment, employment, and/or the termination of my employment that Employer may have against me or that I may have against . . . Employer.

ECF No. 5-1 at 11. The Mutual Arbitration Agreement also delegated gateway disputes about the arbitrability of claims to the arbitrator, as follows:

> Covered disputes also include any claim or controversy regarding the Agreement or any portion of the Agreement or its interpretation, enforceability, applicability, unconscionability, or formation, or whether the Agreement or any portion of the Agreement is void or voidable, with the exception noted in theClass [sic] and Collective Action Waivers section below.

ECF No. 5-1 at 8. Peak Medical now seeks to enforce the agreement and compel arbitration of Plaintiff's claims.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA")[2] provides that a written agreement to arbitrate a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Where a valid arbitration agreement exists, the court must stay proceedings

---

[1] On September 22, 2016, Plaintiff completed an "Electronic Signature and Document Delivery Consent Agreement" in which he agreed to sign future documents using an electronic signature and acknowledged that "attaching my e-signature is the legal equivalent of submitting a document signed by hand." ECF No. 5-1 at 7.

[2] No party disputes that the Federal Arbitration Act applies to the Arbitration Agreement signed by Plaintiff, and the application of the FAA appears consistent with controlling case law. *See Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56–57 (2003).

and direct the parties to proceed to arbitration. *Id*. §§ 3, 4. The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4). This provision "reflects 'a liberal federal policy favoring arbitration agreements,' and creates 'a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act.'" *BOSCA, Inc. v. Bd. of Cnty. Comm'rs*, 853 F.3d 1165, 1170 (10th Cir. 2017) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

Where, however, the scope, validity, or enforceability of the arbitration agreement is in dispute, the court must first determine whether the parties agreed to arbitrate the claims alleged. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985). This is determined with reference to the "federal substantive law of arbitrability," *id*., and applicable state law, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630–31 (2009). The FAA establishes that "as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25.

## DISCUSSION

Peak Medical seeks to enforce the Mutual Arbitration Agreement signed by Plaintiff on May 15, 2019. Because the Mutual Arbitration Agreement contained a provision delegating any disputes over its "interpretation, enforceability, applicability, unconscionability, or formation, or whether the Agreement or any portion of the

3

Agreement is void or voidable" to the arbitrator, ECF No. 5-1 at 11, this Court is without power to consider challenges to the agreement except as they relate specifically to the delegation provision. *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) ("[P]arties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). Plaintiff contends that "[a]rbitration clauses which are alleged to be void due to fraud are reviewable by the Court regardless of the delegation clause"; however, he does not specifically challenge the delegation clause itself as invalid, void, or otherwise unenforceable. ECF No. 9 at 3. Delegation provisions are severable from the arbitration agreement as a whole, and the court cannot consider challenges to the arbitration agreement unless the delegation provision is specifically challenged. *See Rent-A-Center,* 561 U.S. at 68–69, 72 ("[U]nless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator."). Because the evidence clearly demonstrates that the parties executed an agreement to arbitrate, and because Plaintiff does not dispute the validity or enforceability of the delegation provision, the Court must compel arbitration of Plaintiff's claims against Peak Medical.[3] *See* 9 U.S.C. § 3.

Plaintiff contends that the Mutual Arbitration Agreement is "impossible to authenticate" because there is no proof Plaintiff signed it. ECF No. 9 at 5–6. Even when

---

[3] Plaintiff's reliance on *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 445 (2006), is inapposite. *Buckeye* held merely that an arbitration agreement is severable from the contract as a whole, and that the court cannot consider challenges to the contract as a whole if the parties have agreed to arbitrate. The present dispute, where the arbitration agreement contains a delegation clause and Plaintiff

4

the party opposing arbitration has failed to specifically challenge the delegation provision, the Court may not ignore the foundational question of "whether an arbitration agreement [was] formed in the first instance." *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1103 (10th Cir. 2020). This inquiry does not concern whether the agreement was valid or enforceable, but merely "whether any agreement between the parties was ever concluded." *Rent-A-Center*, 561 U.S. at 70 n.2 (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006)). The Court may therefore consider Plaintiff's argument that he never agreed to arbitrate at all.

Pursuant to the Federal Rules of Evidence, a document may be authenticated by testimony of a witness with knowledge that the item is "what it is claimed to be." Fed. R. Evid. 901(b)(1). Likewise, a document may be authenticated by evidence "describing a process or system and showing that it produces an accurate result." Fed. R. Evid. 901(b)(9). Peak Medical's exhibit is accompanied by the Declaration of Gwendolyn Eagen, the Vice President for Corporate Human Resources of Genesis Administrative Services, LLC, agent for Peak Medical. ECF No. 5-1 at 1. Ms. Eagen provided a detailed statement about the functions of the "OnTrack" system, which Plaintiff used to sign the Mutual Arbitration Agreement and other employment documents, and about the electronic signature process. *Id*. at 1–5. The Mutual Arbitration Agreement was signed with Plaintiff's name, Employee ID number, and a date/time stamp. *Id*. Ms. Eagen accessed the document directly from Plaintiff's electronic personnel file, and subsequent access

---

has challenged only the arbitration agreement as a whole, is squarely controlled by the rule of *Rent-A-Center*.

through the OnTrack system "does not impact the date and time stamp associated with a particular document/signature block." *Id*. at 4.

To the extent Plaintiff asserts that another employee, Charles Griffith, could have signed the Mutual Arbitration Agreement because he was provided with Plaintiff's password, *see* ECF No. 9 at 6, the claim is facially implausible. Plaintiff allegedly provided his password to Mr. Griffith in July 2020; the Mutual Arbitration Agreement was signed on May 15, 2019. ECF Nos. 1-1 at ¶ 56, 5-1 at 15. Moreover, Plaintiff's own Declaration acknowledges that he signed the Mutual Arbitration Agreement. *See* ECF No. 9-1 at ¶¶ 9 ("I was told that I had to sign Genesis Healthcare Arbitration Agreement immediately."), 12 ("I believed that I was entering into an arbitration agreement with my employer, Genesis Healthcare, Inc., because it was called Genesis Healthcare Arbitration Agreement, and it stated that it was [an] agreement between me and my employer."). In short, the Court is satisfied of the authenticity of Peak Medical's exhibit and that the Mutual Arbitration Agreement was signed by Plaintiff on May 15, 2019.

The final question before the Court is whether this action should be dismissed or stayed pending arbitration of Plaintiff's claims. The FAA directs the court to "stay the trial of the action until . . . arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. However, where no party has requested a stay and the order compelling arbitration disposes of all issues in the case, the district court may properly dismiss the plaintiff's claims in the form of a final order. *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 796–97 (10th Cir. 1995). Peak Medical moved for dismissal and Plaintiff

did not request a stay. Accordingly, the Court will dismiss Plaintiff's claims with prejudice in lieu of staying the action.

## CONCLUSION

For the foregoing reasons, Defendant Peak Medical New Mexico No. 3 LLC's Motion to Compel Arbitration and Dismiss Plaintiff's Claims with Prejudice (ECF No. 5) is **GRANTED**. The parties are **DIRECTED** to proceed to arbitration, and all pending claims are hereby **DISMISSED WITH PREJUDICE**.

*/s/ Margaret Strickland*
**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE